**UNITED STATES of America,**
**Appellee,**

v.

**Joseph HENDERSON, Appellant.**

**No. 22426.**

United States Court of Appeals
Ninth Circuit.

Dec. 10, 1968.

Jack Morgan (argued), of Morgan & Kraft, San Francisco, Cal., for appellant.

George G. Rayborn (argued), Asst. U. S. Atty., Wm. M. Byrne, U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Crim. Div., Los Angeles, Cal., for appellee.

Before HAMLEY and BROWNING, Circuit Judges, and CROCKER, District Judge*.

HAMLEY, Circuit Judge:

Joseph Henderson appeals from his conviction, on a jury verdict, of robbing the Jefferson-Hill Branch of the Bank of America in Los Angeles, a national bank, in violation of 18 U.S.C. § 2113(a) and (d).

According to the indictment, Henderson and two other men committed the robbery on November 15, 1965. Henderson was arrested at Hayden Corners, Alabama, at 4:01 p. m. on December 13, 1965, by Thomas M. Shaugnessy, a special agent of the Federal Bureau of Investigation. At 4:30 p. m., after the vehicle in which he had been riding was searched, Henderson was taken from the scene of the arrest to the Jefferson County, Alabama, jail. He arrived at the jail at 5:03 p. m. Henderson was "booked" at 5:20 p. m., and twenty minutes were then spent photographing and fingerprinting him.

Special Agent Shaugnessy interrogated Henderson from 5:40 to 6:08 p. m. that day in the presence of Special Agent Lawrence G. Gettings and two state highway patrolmen. During this questioning, according to Government testimony, Henderson admitted that he was one of those who robbed the Jefferson-Hill Branch bank. Henderson refused to sign a statement. After the interrogation, Henderson was taken before a United States Commissioner; however, we do not find in the record the exact time this was done. Agent Shaugnessy testified at the trial concerning Henderson's oral admission, no objection being taken thereto.

■ On this appeal, Henderson first argues that testimony concerning his oral confession should not have been received in evidence because it was obtained during a period of illegal detention in violation of Rule 5(a), Federal Rules of Criminal Procedure.

Henderson did not object to the reception of the evidence in question on this or any other ground. He is therefore in no position to raise this Rule 5(a) question now [1] unless the circumstances show "plain error" within the meaning of Rule 52(b), Federal Rules of Criminal Procedure.

■ Henderson does not here invoke the plain error rule, nor does our review of the record convince us that there was, in this regard, plain error affecting substantial rights. It follows that Rule 5(a) does not require us to hold that the reception of the testimony concerning Henderson's oral admission was reversible error.

Henderson also argues that testimony concerning the oral confession should have been excluded because he was in custody at the time the confession was obtained and he was not provided with counsel. Defendant does not contend that his confession was coerced or otherwise involuntary. Rather he asserts, in effect, that his in-custody confession was admitted into evidence in violation of the principles announced in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

Agent Shaugnessy testified that he had informed defendant of his right to remain silent and his right to retained or appointed counsel before the interrogation commenced. Defendant testified that, before the interrogation began, he had been advised of his right to remain silent, but he had not been advised of his right to consult with or to retain an attorney. Following the introduction of this testimony, the trial court, in stating its grounds for allowing the confession of defendant Henderson to be admitted into evidence, held "that all of his con-

---

* The Honorable M. D. Crocker, United States District Judge for the Central District of California, sitting by designation.

1. See United States v. Velasquez, 2 Cir., 364 F.2d 506; United States v. Currie, 2 Cir., 354 F.2d 163, 165.

stitutional rights were preserved and that he was adequately advised of his constitutional rights by Agent Shaugnessy." It is fair to infer that the trial court found that he had been advised of both the right to remain silent and the right to counsel, retained or appointed, before interrogation, and the record supports this finding.

■ The trial court did not specifically find that defendant waived these constitutional rights. However, we think such a finding is to be inferred. In this connection it should be noted that the strict provisions of *Miranda* with respect to waiver of the right to remain silent or to have the assistance of counsel during interrogation are not applicable. This is because Henderson's trial was commenced before *Miranda* was decided. See Johnson v. New Jersey, 384 U.S. 719, 734, 86 S.Ct. 1772, 16 L.Ed.2d 882.[2]

The failure of the Government to provide Henderson with counsel prior to the custodial questioning therefore provides no basis for reversal.

Henderson's next assertion of error relates to an incident which occurred prior to the commencement of the trial but in the presence of the jury. The Assistant United States Attorney who was to prosecute the case removed a gun which was in the desk of the courtroom clerk, held it in his hands, checked the pull of the trigger, and then apparently put the gun down. Henderson argues that this constituted prejudicial misconduct by the prosecutor.

Out of the hearing of the jury, the trial judge stated to the prosecutor, in effect, that unless he could tie up the gun with the robbery, this conduct would be highly prejudicial. Colloquy then occurred between the court and defense counsel, which indicated that the gun had been taken from one of the defendants a month after the robbery and that there would be testimony by bank personnel to the effect that the gun actually used in the robbery "could have been like" the gun so displayed in the courtroom.

There was no motion for a mistrial based upon this incident. The court stated, however, that during the impaneling of the jury, the court would ask prospective jurors whether, assuming that the gun was not received in evidence, the fact that it was displayed in the courtroom would affect their consideration of the case. Counsel for Henderson and his co-defendant objected to questioning of this kind and the court did not bring the matter up before the jury. The gun was later marked for identification but not introduced as an exhibit.

■ Since Henderson's counsel failed to move for a mistrial, the asserted misconduct in displaying the gun in front of the prospective jurors is not subject to review here unless, under Rule 52(b), it constituted plain error affecting substantial rights. Henderson does not so contend on this appeal.

■ In any event, while the described conduct of the prosecutor is not to be commended, it is our opinion that it did not inject plain error into the case. While no gun was introduced at the trial, a bank employee testified that, during the robbery, defendant Henderson pointed a gun at her. A second bank employee testified that she saw a gun in defendant's hand. Another bank employee testified that she saw a gun in the possession of Henderson's co-defendant. A fourth bank employee testified that the co-defendant told him, during the robbery, that he had a gun. He also testified that he saw a gun in the hand of the third robber. A fifth bank employee testified that Henderson's co-defendant told him "he would blow my brains out," and appeared to be holding a gun under his jacket.

2. *Escobedo* does not apply because defendant did not request an opportunity to consult with his attorney. See United States v. Williams, 9 Cir., 401 F.2d 901; Frizell v. United States, 9 Cir., 394 F.2d 783, 784; and Schoepflin v. United States, 9 Cir., 391 F.2d 390, 392–393.

Willie Lee Henderson, who was indicted with appellant Joseph Henderson, and the latter's co-defendant, but who was not then on trial, testified that he was a participant and that both he and the co-defendant had guns which they displayed. He further testified that defendant had a plastic imitation gun. In his closing argument before the jury, counsel for Henderson himself adverted to the subject of guns, telling the jury: "They talked about guns. There have been no guns produced at this trial."

In the light of these unchallenged trial references to the use of guns during the robbery, we do not believe the brief display of a gun before the trial commenced could have affected the verdict. We therefore hold that there was no plain error in this regard.

■ Henderson contends that the judgment should be reversed because the court denied his motion for a mistrial after the Assistant United States Attorney talked with a member of the jury at the noon recess on the first day of the trial.

When the trial resumed after the recess, but before the jury was brought in, the Assistant United States Attorney called the matter to the attention of the trial court. The prosecutor said he spoke to the juror to ascertain, as he suspected, that he had had social contacts with the juror's husband, and learned that this was the fact. The trial court stated, and the prosecutor conceded, that instead of contacting the juror directly, the matter of a prior social relationship with the juror's husband should have been brought to the court's attention.

Counsel for Henderson then objected to the seating of the juror to whom the Government attorney had spoken. The latter stated that he did not object to the seating of the alternate juror. Counsel for Henderson then stated that this would be satisfactory if it should be ascertained that the jury would not be affected by the substitution of jurors and

if the juror to whom the Assistant United States Attorney had spoken had not discussed this incident with the other jurors. Henderson personally agreed with his attorney's position.

The jury was then recalled and the court asked the juror in question whether she had discussed, with the other jurors, the fact that the Assistant United States Attorney had spoken to her. She replied that she had told them that the Assistant United States Attorney had told her that he had met her husband. The court then addressed the jury as a whole, asking whether any member of the jury would be affected one way or the other by hearing of the conversation in question. There was no response.

The court then asked the jurors whether there had been any conversation between them to the effect that the juror in question might be removed from the jury. Two jurors indicated that there was general conversation between the jurors concerning the matter, including speculation that the juror would be replaced. Next, the court asked each individual juror, including the alternate, whether the replacement of the juror in question by the alternate would affect his or her consideration of the case, and whether the juror being questioned would be able to render a fair and impartial verdict. Each answered "no" to the first question and "yes" to the second. Nevertheless, since it appeared that the incident had been discussed among the jurors, counsel for Henderson renewed his motion for a mistrial. It was denied.

In view of the care with which the court ascertained, from each juror who participated in the verdict, the total lack of prejudice arising from the incident, we hold that the trial court did not abuse its discretion in denying the motion for mistrial.

Henderson's remaining arguments for reversal have been examined but, in our opinion, lack sufficient merit to warrant discussion.

Affirmed.