Joseph BULLS, Appellant,

v.

UNITED STATES, Appellee.

No. 83–1472.

District of Columbia Court of Appeals.

Argued Jan. 22, 1985.

Decided April 4, 1985.

Geoffrey D. Allen, appointed by the court, for appellant.

Joan Draper, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Thomas J. Tourish, Jr., and Darryl W. Jackson, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN,* FERREN, and TERRY, Associate Judges.

FERREN, Associate Judge:

A jury convicted appellant of assault with a dangerous weapon, D.C.Code § 22–502 (1981), and the court sentenced him to 40 to 120 months' imprisonment. He claims on appeal that the trial court erred in seating an alternate juror after the jury had retired to deliberate. We agree. On this record, moreover, we cannot say that the court's error was not prejudicial. We therefore reverse appellant's conviction and remand for a new trial.[1]

* Associate Judge Newman concurs in the result only.

1. Appellant also argues that the trial court (1) abused its discretion under Super.Ct.Crim.R. 16 by ruling that the government could impeach appellant with convictions not revealed until the second day of trial; (2) abused its discretion in denying appellant's motion for a court-ordered

## I.

In the early morning of September 24, 1982, the complainant, Anthony Moore, accompanied a friend to the 200 block of 37th Street, S.E., near Anacostia Road. Moore became frustrated during an attempt to purchase marijuana and said that he would shoot everybody in the area if he had a weapon. A man later identified as appellant approached Moore, asked him if he had a weapon, pushed him against a nearby car and frisked him, and eventually wrestled him to the ground and began hitting him. Moore broke free and ran down a hill into a wooded area. Moore testified that appellant followed and called out after him, and that when he looked back he saw appellant pointing a gun at him. Moore continued to run and someone shot at him, hitting him in the back of his left leg. The jury heard corroborating testimony from others who were present at the time, but the jury also heard testimony that someone in addition to appellant followed Moore and that it was difficult to tell how many persons followed Moore or where the shots came from.

At trial, the court permitted the government to introduce evidence tending to show that, after this incident, appellant had threatened Moore (implying consciousness of guilt) by saying on a bus, in Moore's presence, "I feel like shooting somebody." The court also denied a defense request for a court-ordered eye examination of Moore, refused to give a requested jury instruction on self-defense, and permitted the government, in closing argument, to refer to appellant's two prior felony convictions which the government had not disclosed to coun-sel until the second day of trial, despite a timely defense request pursuant to Super. Ct.Crim.R. 16. Because these first three rulings were not erroneous on the record presented and because we need not address the Rule 16 issue for purposes of the retrial, we have summarily disposed of these asserted errors, *see supra* note 1, and proceed to the principal issue on appeal.

## II.

At the conclusion of the defense case and before the court's discussion with counsel about jury instructions, a deputy marshal notified the court that juror number seven had been injured in a fall. At the conclusion of the discussion on jury instructions, and then again after the arguments of counsel and the instructions to the jury, the court questioned juror number seven in the presence of counsel. On both occasions the juror insisted that he felt fine and was able to participate in deliberations. The court was satisfied and dismissed the alternates. The jury retired at 4:15 p.m. to begin its deliberations. At 4:55 p.m., the court recalled the jury. After ascertaining that the jurors had chosen a foreperson but had not yet reached a unanimous verdict, the court excused them until the following day.[2]

■ The next afternoon, after proceedings resumed, the court informed counsel that juror number seven had been taken to the hospital the night before and that the court intended to replace him with the first alternate, whom the courtroom clerk had been "prudent enough" to retain.[3] The

eye examination of the complainant; (3) erred in admitting evidence of a threat by appellant against complainant after the assault incident; and (4) erred in refusing to instruct the jury on self-defense. Because the first assertion of error is irrelevant to the new trial, we do not address it. We reject appellant's other three contentions.

2. The court questioned the jurors as follows before excusing them:

THE COURT: Ladies and gentlemen, have you selected a foreperson? And whom might that be? Ma'am, would you stand and give us your number please?

A JUROR: 1154.
THE COURT: 1154. I take it that the jury has not yet reached a unanimous verdict?
JUROR 1154: No, Your Honor.

3. The retention of an alternate is, in itself, a violation of Super.Ct.Crim.R. 24(c), which states: "An alternate juror who does not replace a regular juror shall be discharged at the time that the jury retires to consider its verdict." Absent prejudice, however, failure to discharge an alternate at the time the jury retires is not reversible error. *Bowyer v. United States,* 422 A.2d 973, 977–78 (D.C.1980) (court told alternates, after jurors had retired to deliberate, to

court stated that "[d]eliberations as far as I understand have not begun."[4] Both counsel urged a voir dire of the alternate. Defense counsel, moreover, stated his impression that the jury "had been deliberating" during its forty-minute session the previous afternoon. The court responded: "It's my understanding that the deliberation at that point in time was geared towards identifying a foreperson." *See supra* note 4. Defense counsel then suggested that they "talk again to" juror number seven, intimating that perhaps that juror could be retained.[5] The court refused to do so. Defense counsel then objected to the substitution of an alternate: "whenever the jury was deliberating on any subject, they should have been present for all the deliberations, so we would object to [an alternate's] joining in at this stage."[6] Defense counsel then moved for a mistrial, and the court denied the motion.

The court proceeded to voir dire the alternate and ascertained to its satisfaction

join jurors for lunch if they had not reached a verdict but not to discuss the case with them; appeals court found no prejudice).

4. The only basis in the record for this statement is the court's brief questioning of the jury the preceding afternoon. *See supra* note 2.

5. Defense counsel did not formally object to the elimination of juror number seven, nor did he state that preservation of the initially constituted jury was the only alternative acceptable to his client.

6. Appellant's counsel, who was also defense counsel at trial, expressed the view at oral argument that all of the jurors should be present for all deliberations, including the selection of a foreperson. Thus, even if the trial court had a legitimate basis for concluding that the jury had done this much and no more, the substitution of an alternate at this point would still be error. We need not address this issue, however, because we perceive a more substantial ground for reversal.

7. Appellant argues that the alternate may have been tainted because she had not been sequestered and the court's voir dire questions were leading. We note, however, that defense counsel declined to ask any questions of the alternate and did not specifically object to her fitness.

that she had remained untainted by contact with the jurors or with other persons.[7] Defense counsel then urged the court at least to voir dire the foreperson, to make sure that nothing more than her selection—*i.e.,* no substantive deliberations—had taken place the previous afternoon. The court declined: "there is no question in my mind that there have not been substantial deliberations in this case." *See supra* note 4. The court dismissed juror number seven, told the jury of the substitution, and said, "you may begin your deliberations in this case." The jury then retired and brought back a guilty verdict at 4:35 p.m.[8]

### III.

Appellant contends that the replacement of juror number seven with an alternate, after deliberations had begun, violated both the Constitution and Super.Ct.Crim.R. 24. Although considerable authority supports the government's position that the trial court's action was not unconstitutional,[9] we

8. The record is somewhat confusing as to the length of the reconstituted jury's deliberations. According to the docket, jury deliberation began at 3:15 p.m.; the transcript shows that the jury sent a note at 4:23 p.m. indicating that it had reached a verdict. Deliberation time, therefore, was apparently 68 minutes. Appellant suggests that the time was even shorter; he claims that a transcript reference to 4:35 p.m. is a mistaken reference to 3:35 as the time the jury convened. A careful reading, however, shows that 4:35 p.m. was, instead, the time at which the parties were ordered to reappear in the courtroom.

9. Appellate courts presented with similar cases have considered and rejected the constitutional argument. *See, e.g., Henderson v. Lane,* 613 F.2d 175 (7th Cir.) (no federal constitutional bar to state court's substitution of alternate after jury deliberations had begun), *cert. denied,* 446 U.S. 986, 100 S.Ct. 2971, 64 L.Ed.2d 844 (1980); *accord United States v. Phillips,* 664 F.2d 971, 992–93 (5th Cir.1981), *cert. denied,* 457 U.S. 1136 & 459 U.S. 906, 102 S.Ct. 2965 & 103 S.Ct. 208, 73 L.Ed.2d 1354 & 74 L.Ed.2d 166 (1982); *cf. People v. Collins,* 17 Cal.3d 687, 690–94, 131 Cal.Rptr. 782, 784–87, 552 P.2d 742, 744–47 (1976) (no bar under California state constitution), *cert. denied,* 429 U.S. 1077, 97 S.Ct. 820, 50 L.Ed.2d 796 (1977); *but cf. People v. Ryan,* 19 N.Y.2d 100, 104, 278 N.Y.S.2d 199, 203, 224 N.E.2d 710, 713 (1966) (prohibited by New York state constitution).

need not reach that issue, for we conclude that the trial court violated Rule 24.

■ Rule 24(c) provides that alternate jurors "shall replace jurors who, *prior to the time* the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." (Emphasis added.) It further provides that an "alternate juror who does not replace a regular juror *shall* be discharged *at the time* that the jury retires to consider its verdict." (Emphasis added.) Although the rule does not specifically address the question of post-deliberation substitution, it unquestionably implies that the court would violate the rule if it replaced a juror with an alternate after the jury retired. "[W]hen the language of a statute is clear and admits of no more than one meaning, we are not empowered to look beyond the literal words of the statute," *Nova University v. Educational Institution Licensure Commission*, 483 A.2d 1172, 1179 (1984) (citations omitted), *cert. denied,* ─── U.S. ───, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985), unless the clarity of the language, upon careful scrutiny, is "superficial," or literal application would provide "absurd results," create an "obvious injustice," or frustrate the "legislative purpose." *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 754 (D.C.1983) (en banc). The same interpretive policy applies to court rules.[10]

A leading commentator in the field of criminal procedure, however, in discussing federal Rule 24,[11] has cited "two important qualifications"—waiver and harmlessness—to absolute enforcement of the rule that, once the jury has begun deliberations, alternates may not be substituted for regular jurors who are excused for cause. 8A J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 24.-06 (2d ed. 1984). As to the first, quite a few courts have held that a defendant may waive the federal Rule 24(c) prohibition by stipulating to the mid-deliberation substitution of an alternate. *See, e.g., United States v. Crisco*, 725 F.2d 1228 (9th Cir.), *cert. denied,* ─── U.S. ───, 104 S.Ct. 2360, 80 L.Ed.2d 832 (1984); *United States v. Foster*, 711 F.2d 871 (9th Cir.1983), *cert. denied,* ─── U.S. ───, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984); *United States v. Kaminski*, 692 F.2d 505 (8th Cir.1982); *United States v. Davis*, 608 F.2d 698 (6th Cir. 1979), *cert. denied,* 445 U.S. 918, 100 S.Ct. 1280, 63 L.Ed.2d 602 (1980); *United States v. Baccari*, 489 F.2d 274 (10th Cir.1973), *cert. denied,* 417 U.S. 914, 94 S.Ct. 2614, 41 L.Ed.2d 218 (1974); *Leser v. United States*, 358 F.2d 313 (9th Cir.), *cert. dismissed,* 385 U.S. 802, 87 S.Ct. 10, 17 L.Ed.2d 49 (1966).

Even if we assume, however, that the federal waiver exception could apply under Super.Ct.Crim.R. 24(c), appellant at no time stipulated to the substitution of an alternate for juror number seven. Indeed, defense counsel promptly objected and moved for mistrial when the trial court proposed such substitution.[12]

---

**10.** We note, moreover, that at least one other state court, in interpreting a similarly-worded rule, has "decline[d] to infer from a silent statute that the legislature approves substitution during jury deliberations," and has proceeded, "in the absence of express authorization by statute or rule for substitution of an alternate juror for a regular juror after jury deliberations have begun," to fashion a prospective per se rule against such substitution unless the parties agree to it. *State v. Lehman*, 108 Wis.2d 291, 304–08, 311–15, 321 N.W.2d 212, 219–20, 222–23 (1982). *See also United States v. Virginia Erection Corp.*, 335 F.2d 868, 871 (4th Cir.1964) (interpreting federal rule; "Rule 24(c) is explicit in defining the function of an alternate juror and the time when his replacement of a disqualified regular juror begins, that is, *prior* to the

time when the jury retires to consider its verdict") (emphasis in original).

**11.** Cases interpreting the federal rule provide guidance because, according to the "General Note to the Superior Court Rules of Criminal Procedure" (1984 ed.), our local rules are "closely modeled on the structure and substance of the Federal Rules of Criminal Procedure." Super.Ct.Crim.R. 24(c) and federal Rule 24(c) are the same, except that our local rule provides for dismissal of alternates "at the time that the jury retires" whereas the federal rule requires dismissal "after the jury retires."

**12.** We express no opinion on the validity of a defense waiver of the Rule 24(c) prohibition against substituting an alternate for a disabled

The federal circuit courts of appeal are divided on the second identified qualification on absolute enforcement of federal Rule 24(c). Some have ruled that the juror substitution did not prejudice the defendant and thus was harmless under the circumstances. *See, e.g., United States v. Hillard,* 701 F.2d 1052, 1058 (2d Cir.) (charges arising from large-scale heroin operation), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1318 (1983); *Kaminski,* 692 F.2d at 518 (mail fraud and conspiracy charges against five co-defendants); *United States v. Kopituk,* 690 F.2d 1289, 1308 (11th Cir.1982) (massive, complex RICO case), *cert. denied,* 461 U.S. 928 & 460 U.S. 289, 103 S.Ct. 2089 & 103 S.Ct. 3542, 77 L.Ed.2d 300 & 77 L.Ed.2d 1391 (1983); *United States v. Phillips,* 664 F.2d 971, 994 (5th Cir.1981) (narcotics and RICO charges against two co-defendants arising from massive marijuana smuggling operation), *cert. denied,* 457 U.S. 1136 & 459 U.S. 906, 102 S.Ct. 2965 & 103 S.Ct. 208, 73 L.Ed.2d 1354 & 74 L.Ed.2d 166 (1982).[13]

Other courts, however, have held juror substitution or other Rule 24(c) violations to be reversible error per se. *See, e.g., United States v. Lamb,* 529 F.2d 1153 (9th Cir.1975) (en banc) (after court rejected guilty verdict as inconsistent with instructions and juror was dismissed for emotional distress, court substituted alternate for balance of deliberations); *United States v. Beasley,* 464 F.2d 468 (10th Cir.1972) (alter-

nate retired with other jurors for 20 minutes by mistake), *cert. denied,* 416 U.S. 941, 94 S.Ct. 1946, 40 L.Ed.2d 292 (1974); *United States v. Virginia Erection Corp.,* 335 F.2d 868 (4th Cir.1964) (with defense consent, alternate retired with jury and was told not to participate unless juror became ill or otherwise disqualified).

■ It is apparent that the courts have reached their results largely because of the circumstances presented, upholding juror substitution when there had been a substantial investment in a protracted, complex trial, *see, e.g., Kopituk* and *Phillips,* while reversing convictions when the reconstituted jury took less than a half hour to convict after the original jury had deliberated four hours, *see Lamb,* or when the alternate had been in the room with the jury, in effect, as a thirteenth juror, *see, e.g., Beasley* and *Virginia Erection Corp.* Because of the variety of circumstances that can occur, we decline to adopt a per se approach to Rule 24(c) violations. But, given the policies underlying the rule, we conclude that reversal will always be required when the court, over objection, substitutes an alternate for a juror, once the jury has retired to deliberate, unless the government proves beyond a reasonable doubt that the defendant has suffered no prejudice.

### IV.

■ We take this approach because a criminal defendant is entitled to a "unani-

juror once deliberations have begun. We note, however, that the prescribed procedure for dealing with such situations, short of a mistrial, is set forth in Super.Ct.Crim.R. 23(b), which was not considered in this case:

> Juries shall be of 12 but at any time before verdict the parties may stipulate in writing with the approval of the Court that the jury shall consist of any number less than 12 or that a valid verdict may be returned by a jury of less than 12 should the Court find it necessary to excuse 1 or more jurors for any just cause after trial commences.

13. In these cases, prejudice to the defendant was found minimal and substantially outweighed by the heightened state interests in prosecuting crime and in judicial economy. For example, in *Kopituk,* "the trial court's decision to substi-

tute the alternate was made in the context of a trial of truly epic proportions in terms of length, scope and expense to both sides." 690 F.2d at 1311. Prejudice was minimized by voir dire "of the remaining 11 regular jurors individually regarding their respective abilities to begin deliberating anew" and by an instruction "that the jurors were duty-bound to begin their deliberations afresh." 690 F.2d at 1307. Moreover, the new jury deliberated for over a week. The *Phillips* court limited its ruling to the "exceptional context" of that case: a complicated trial of multiple defendants on numerous charges, lasting over four months. 664 F.2d at 996. The new jury was voir dired and instructed on starting deliberations anew. In addition, the reconstituted jury deliberated for six days after the original jury had deliberated for two.

mous" verdict. Super.Ct.Crim.R. 31(a). This means that the same jurors must participate "in the entire deliberative process." *State v. Lehman*, 108 Wis.2d 291, 307, 321 N.W.2d 212, 220 (1982). The unanimity requirement is not met "unless those 12 reach their consensus through deliberations which are the common experience of all of them." *People v. Collins*, 17 Cal.3d 687, 693, 131 Cal.Rptr. 782, 786, 552 P.2d 742, 746 (1976), *cert. denied*, 429 U.S. 1077, 97 S.Ct. 820, 50 L.Ed.2d 796 (1977). This "essential element of unity in the verdict," *id.*, is endangered when an alternate joins a jury after deliberations have begun. The eleven original jurors will have in mind the views of the discharged juror while the alternate will not, and, in any event, the alternate may be vulnerable to coercion by other jurors who have already formulated their views. *See Lamb*, 529 F.2d at 1156; *Collins*, 17 Cal.3d at 693, 131 Cal.Rptr. at 786, 552 P.2d at 746; *People v. Ryan*, 19 N.Y.2d 100, 103, 278 N.Y.S.2d 199, 202, 224 N.E.2d 710, 712 (1966); *Lehman*, 108 Wis.2d at 307, 321 N.W.2d at 220.[14]

■ The record in this case leaves substantial doubt that appellant was free from prejudice from the juror substitution here. The jury's first deliberation took about 40 minutes; the second, about 68 minutes. From all appearances, the alternate missed a significant portion of the deliberations, and thus we cannot be sure that the reconstituted jury began deliberations anew, untainted by the original participation of juror number seven or by coercion of the late-arriving alternate. Absent a voir dire of all the jurors at the time of the substitution, there was no basis for the trial court's conclusion that they had not begun substantive deliberations the first day. *See supra* notes 2 & 4. Nor did the court instruct the jury, in any event, to begin its deliberations anew. Nor, finally, did the reconstituted jury's deliberations take long enough to imply a fresh start.

We do not suggest, as some courts have, *see supra* note 13, that such a voir dire and instruction, coupled with lengthy deliberations by the new jury, could have saved the situation even if the jurors truly had not begun to deliberate or otherwise could satisfy the court that they would be able to start over. We stress the absence of these factors merely to underscore our conclusion that the record here reflects a substantial likelihood of the kinds of prejudice that Rule 24(c) is intended to prevent.

Defense counsel expressed, simply and urgently, his client's right when he said: "I thought that the jurors had to be—all of the jurors had to be present for all of the deliberations." We agree. This "shared responsibility" is an "essential feature" of the jury. *Williams v. Florida*, 399 U.S. 78, 100, 90 S.Ct. 1893, 1906, 26 L.Ed.2d 446 (1970). We emphasize, once again, that any juror substitution, once deliberations have begun, violates Super.Ct.Crim.R. 24(c), and that a trial judge who attempts to avoid a mistrial in this way runs the risk of virtually certain reversal.

*Reversed and remanded.*

---

**14.** In *Lamb*, the court also stressed that substitution of an alternate once jury deliberations have begun "significantly limits the accused's right to a mistrial if the original jury cannot reach agreement" and creates pressure on a lone juror holding out against conviction "to feign illness or other incapacity so as to place the burden of decision on an alternate juror." 529 F.2d at 1156 (footnote omitted).