Orlando R. LEEPER, Appellant,

v.

UNITED STATES, Appellee.

No. 88-1509.

District of Columbia Court of Appeals.

Argued June 12, 1990.
Decided Aug. 16, 1990.

Brian C. Plitt, Washington, D.C., appointed by this court, for appellant.

John R. Fisher, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Sharon M. Collins and Barry Coburn, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before BELSON, STEADMAN and SCHWELB, Associate Judges.

SCHWELB, Associate Judge:

As Orlando R. Leeper's trial was proceeding to its conclusion, one of the jurors received the news that her mother had died. Unfortunately, though perhaps understandably given the tragic circumstances, the juror did not report the death,

---

and her consequent unavailability, to the judge until the two alternate jurors had been released. This case chronicles the judge's attempt to save the trial by recalling one of the alternates and raises the question whether Leeper's substantial rights were violated when the former alternate was seated as a juror. Concluding that the judge committed no reversible error and that there was no prejudice to Leeper, we affirm the conviction.

## I

Leeper was found guilty by a jury of distribution of cocaine, in violation of D.C. Code § 33–541(a) (1988). He argued below, and now contends on appeal, that the trial court violated Rule 24(c) of the Superior Court Rules of Criminal Procedure by seating the former alternate as a juror, in place of the juror whose mother had died, after the jury as originally constituted had retired to consider its verdict. He claims that the trial judge compounded his error by holding that the alternate was eligible to serve in spite of the latter's acknowledgment that he had discussed the case with the second alternate, who had also been excused.

■ The series of events which led to the problem with which we are now confronted began when the trial judge, having delivered his final instructions to the jury, excused the two alternates and directed the jurors to "retire and undertake your deliberations." After escorting the jury to the jury room, the deputy clerk returned to the courtroom and announced: "Your Honor, one of the jurors just got a message, just called her brother and found out her mother died last night." When Leeper's attorney stated that he was unwilling to proceed with a jury of eleven, the judge instructed the deputy clerk to try to locate the two alternates who had just been excused.[1] At this point the prosecutor stated: "Your Honor, perhaps the jury should be told not to deliberate until—." The deputy clerk interrupted to advise the court that she had left the door to the jury room open and had told the jurors "not to do anything until I get back."[2]

The court then summoned Juror 627, the individual who had learned earlier that day of her mother's death. Apparently, Juror 627 had received the news during the lunch break, but had not informed the judge or his staff until the conclusion of the trial. After conducting a brief *voir dire*, the judge sent Juror 627 back to the jury room. Following a short bench conference, he recalled the jury and excused Juror 627. The judge advised the remaining jurors of the situation, admonished them not to discuss the case with anyone or among themselves, and excused them until the next morning. The eleven jurors had been alone in the jury room for a total of twenty-five minutes.

The following morning, the previously excused alternates having been located, the judge proceeded to *voir dire* each one separately.[3] Satisfied that the first alternate examined, Juror 722, could properly serve, the judge substituted him for Juror 627. He then instructed the jurors to return to the jury room, elect a foreman or forewoman, and begin their deliberations. One hour and twelve minutes later, the jury, which had chosen Juror 722, the former alternate, as its foreman, returned with a verdict of guilty.

Rule 24(c) provides in pertinent part:

Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties.... An alternate juror who does not replace a regular juror shall be dis-

---

1. It appears that the two former alternates had already departed, and that the deputy clerk was not able to contact them until the following morning.

2. Defense counsel voiced no objection to this procedure, nor was there any suggestion by anyone that these steps were insufficient to en-

sure that the jury would not deliberate. Indeed, we think that the deputy clerk, Ms. Doris Jackson, handled the matter with commendable alertness and in a professional manner.

3. The substance of the *voir dire* of the former alternate is set forth at pp. 699–700, *infra*.

charged at the time that the jury retires to consider its verdict.

In *Bulls v. United States,* 490 A.2d 197 (D.C.1985), this court held that "any juror substitution, once deliberations have begun," violates this Rule. *Id.* at 202. We further stated that "reversal will always be required when the court, over objection, substitutes an alternate for a juror, once the jury has retired to deliberate, unless the government proves beyond a reasonable doubt that the defendant has suffered no prejudice." *Id.* at 201. Leeper argues that the substitution that took place at his trial requires reversal in light of *Bulls.* We disagree.

As the court observed in *Bulls, supra,* 490 A.2d at 200 n. 11, "[c]ases interpreting the federal rule provide guidance because ... our local rules are closely modeled on the structure and substance of the Federal Rules of Criminal Procedure." Two federal appellate decisions addressing situations similar to this one are instructive for the purpose of our review of the trial judge's resolution of the problem. In *Martin v. United States,* 691 F.2d 1235 (8th Cir.1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983), the judge received a report of bizarre and irrational behavior on the part of one of the jurors.[4] The information came to the judge's attention shortly after the alternate juror had been excused and the jury had retired. *Id.* at 1237. The judge "immediately" sent his clerk to "direct the jury not to begin deliberating and to hold up on doing anything until further word was given." *Id.* He then substituted the alternate for the afflicted juror. Rejecting the contention that this substitution was in contravention of Rule 24(c), *id.,* the appellate court affirmed the defendant's conviction. The court held that "although the jury had left the courtroom, because the deliberations had not commenced, the jury had not retired to consider the verdict, and the substitution of

the alternate juror was proper." *Id.* at 1237–38 (footnote omitted).

*United States v. Cohen,* 530 F.2d 43 (5th Cir.), *cert. denied,* 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976), stands for essentially the same proposition. After the district judge in that case had completed his instructions and ordered the jury to retire, the appellant's codefendant claimed that one of the jurors had slept during instructions. The codefendant's counsel requested that this juror be disqualified and that an alternate be seated in his place. *Id.* at 48. The trial judge recalled the jury, which had been waiting in the hallway outside the courtroom, and replaced the challenged juror with an alternate. *Id.* On appeal, the court affirmed the conviction, holding that there had been no violation of Rule 24(c) because "[a]lthough the jury had been ordered to retire, it had not yet done so because the jurors had never begun their deliberations." *Id.*

We are persuaded by the reasoning of the courts in *Martin* and *Cohen,* and conclude that the substitution of Juror 722 for Juror 627 likewise did not violate Rule 24(c). That Rule states that substitutions must take place before the jury "retires to consider its verdict." Although Leeper's jury had "retired" after the judge had delivered his instructions, in the sense that the jurors had gone to the jury room, it had not done so "to consider its verdict." This is evident from the undisputed fact that the deputy clerk left the door open and instructed the jurors "not to do anything." Nothing in the record suggests that the jury ignored this direction, nor was there any contemporaneous claim that this had occurred or that additional prophylactic measures were appropriate. *Cf. Scull v. United States,* 564 A.2d 1161, 1165 n. 7 (D.C.1989) ("[U]nless the contrary appears, we must presume that the jury understands and follows its instructions.").[5]

In the present case, there is especially persuasive evidence that the jury complied

---

4. The juror had apparently impersonated court personnel and stopped people without authority to demand identification from them.

5. The instruction in *Scull* came from the judge, while that in the present case came from the deputy clerk. Under these particular circumstances, however, we discern no reason to believe that the jurors did not comply with the deputy clerk's directive. In any event, the instruction to select a foreman or forewoman before embarking upon substantive delibera-

with the deputy clerk's admonition. In his original charge, and again after substituting Juror 722 for Juror 627, the judge instructed the jury to elect a foreman or forewoman before beginning substantive deliberations. That Juror 722 was ultimately selected as foreman is compelling evidence that no deliberations had occurred before he became a member of the jury.

The substitution of the former alternate for the bereaved juror at Leeper's trial is readily distinguishable from the situation in *Bulls*. Following closing argument and instructions, the jury in *Bulls* retired to deliberate at 4:15 p.m. 490 A.2d at 198. Forty minutes after deliberations had begun, the judge recalled the jury. Ascertaining that the jurors had not yet arrived at a unanimous verdict, the court dismissed them until the next day. *Id.* The following afternoon, the judge, over the objection of defense counsel, substituted an alternate, whom the clerk had had the foresight to "retain," because one of the jurors had been taken to the hospital during the night.[6] *Id.* The reconstituted jury then retired, deliberated for sixty-eight minutes, and returned a verdict of guilty. *Id.* at 199 & n. 8. Thus, in *Bulls*, the substitution had occurred *after* deliberations had begun.[7] By contrast, at Leeper's trial, all members of the jury that returned the verdict were present throughout the jury's deliberations.

## II

■ Leeper also argues that the trial court should not have seated Juror 722

tions, *see* discussion in text, *infra*, came from the judge, not the clerk.

6. The hospitalized juror had been injured in a fall before the jury had retired, but had informed the trial court that he felt fine and was able to continue as a juror. *Bulls, supra*, 490 A.2d at 198. We noted in *Bulls* that the retention of an alternate after deliberations have begun is itself a violation of Rule 24(c). *Id.* at 198 n. 3.

7. The trial judge in *Bulls* remarked that, as he understood it, the deliberations had been geared to the selection of a foreperson, but this court concluded that there was no support in the record for this understanding. 490 A.2d at 198–99 & n. 2 & n. 4.

because he admitted that he had discussed the case with the other alternate after the court had initially excused them both. As we recently stated in *Washington v. Washington Hospital Center*, 579 A.2d 177, 185 (D.C.1990),

> the remedy for allegations of juror bias is a hearing to determine whether the misconduct actually resulted in prejudice. *Smith v. Phillips*, 455 U.S. 209, 215–17 [102 S.Ct. 940, 945–46,. 71 L.Ed.2d 78] (1982). *See Catlett v. United States*, 545 A.2d 1202, 1213 (D.C.1988), *cert. denied*, [488 U.S. 1017] 109 S.Ct. 814 [102 L.Ed.2d 803] (1989); *Shannon & Luchs Management Co. v. Roberts*, 447 A.2d 37, 41 (D.C.1982). Following a proper hearing, the determination of juror bias or prejudice lies particularly within the discretion of the trial court, reversible only for a clear abuse of discretion, *id.* at 43, and the findings of fact underlying that determination are entitled to "great deference." *Brooks v. United States*, 536 A.2d 1091, 1096 (D.C.1988).

Our review is deferential because the question of prejudice turns substantially on the judge's appraisal of the juror's demeanor, *Catlett, supra*, 545 A.2d at 1213, and is therefore one about which the trial judge is "especially qualified to render a sound opinion." *Waller v. United States*, 389 A.2d 801, 805 (D.C.1978), *appeal dismissed and cert. denied*, 446 U.S. 901, 100 S.Ct. 1824, 64 L.Ed.2d 253 (1980);[8] *see also Letsinger v. United States*, 402 A.2d 411, 417–

8. In *Waller*, this court, relying on *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954), stated that improper juror contact is presumptively prejudicial and that the burden rests heavily on the government to establish that such contact was harmless. *Waller, supra*, 389 A.2d at 805. In *Catlett*, without mentioning *Remmer* or *Waller*, but relying on *Smith v. Phillips*, 455 U.S. at 215, 217, 102 S.Ct. at 945, 946, we stated that the judge should hold a hearing at which *the defendant* has the opportunity to prove actual bias. *Catlett, supra*, 545 A.2d at 1213. The reason for the apparent inconsistency may be that *Smith v. Phillips*, at least, substantially modified the teaching of *Remmer*. *See Brooks, supra*, 536 A.2d at 1096. In the present case, we need not choose between *Waller* and *Catlett* because, assuming, *arguendo*,

18 (D.C.1979) ("trial court is best equipped to evaluate such matters"); *United States v. Flynn,* 216 F.2d 354, 372 (2d Cir.1954) (per Harlan, J.) (disqualification of juror is matter of great delicacy "in which right judgment depends ... heavily on impressions formed from direct contact"), *cert. denied,* 348 U.S. 909, 75 S.Ct. 295, 99 L.Ed. 713 (1952). Similarly, the extent and type of the trial court's investigation into the improper contact are confided to the court's discretion and reviewable only for abuse. *United States v. Fryar,* 867 F.2d 850, 854 (5th Cir.1989); *United States v. Doe,* 513 F.2d 709, 711–12 (1st Cir.1975); *accord, United States v. Flynn, supra,* 216 F.2d at 372; *see also Washington v. Washington Hospital Center, supra,* at 185.[9]

The trial court's examination of Juror 722 proceeded as follows:

THE COURT: Now when you left here yesterday, I tried to reach you and ultimately did reach you both, you and the other alternate. The question I have at this time is this, sir, have you discussed this case [with] either [sic] the other alternate juror or with anybody else after you left here; did you talk about this case at all in any manner?

JUROR 722: With the other alternate.

THE COURT: Now, I don't want to know what you discussed, I don't want any idea. Was your discussion of such a nature that if you were seated on this jury, do you think you would be able to go back in and listen to all the other jurors, and [could] you participate in the jury and arrive at a verdict without being prejudiced, one way or the other, for or against the defendant, for or against the government?

JUROR 722: I think I could be fair and impartial.

THE COURT: All right.

Counsel for Leeper then requested a bench conference, which proceeded as follows:

DEFENSE COUNSEL: Your Honor, at this point, because this alternate indicated that he had discussed the case with the other alternate, I think that contaminates both in this respect, that is, after they were excused from the case, it's entirely possible that they had a discussion concerning whether or not the defendant was guilty.

THE COURT: I understand that. I don't want to go into that.

DEFENSE COUNSEL: I ___ because that has possibly taken place, because they may have positions which they will take into the jury room, I will have to request a mistrial at this time.

THE COURT: All right. Now, I'm going to ask him another question. I understand your request.

The judge then resumed his *voir dire:*

THE COURT: Juror Number 722, was your discussion with the other alternate of such a nature that you formed a firm opinion as to the guilt or the innocence of the defendant?

JUROR 722: No.

THE COURT: And is it your opinion, sir, that you can, even though you had a discussion with him or talked with him about this matter, that you could participate in this jury and be perfectly open-minded and listen to everybody else and participate in the discussions?

JUROR 722: Yes, I can.

THE COURT: Thank you, very much.

Leeper now contends that the trial judge should at least have inquired into the specific subject matter of the conversation. The government responds that the judge

that a presumption of harm could arise even under the *Waller* rule where, as here, the conversation between two former alternates was proper when it occurred, *see* n. 9, *infra,* the juror's testimony was sufficient, under *Waller,* to rebut it.

**9.** Many of the cases dealing with the proper scope of the trial judge's investigation arise out of *improper* contacts with a juror (as in *Waller*) or allegations of juror misconduct (*e.g., Catlett, Doe, Fryar*). In the present case, there was no misconduct or impropriety. At the time the two former alternates discussed the case, each had been excused, and the judge's prohibition of such discussion was no longer in effect. Under these circumstances, the inference of prejudice is significantly weaker than in cases where the contact was improper rather than innocent.

exercised appropriate caution to avoid creating, through his own questions, the very kind of improper influence the possible existence of which those questions were designed to elicit.

This court has previously considered the contamination issue in a somewhat different context. In *Waller, supra,* a man had approached an alternate juror during a recess and stated "you had better not find him guilty." 389 A.2d at 804. The alternate reported this conversation to one of the regular jurors. That juror related that she proceeded to tell two other members of the jury the fact of the communication—"somebody had said something to [the alternate]"—but not the nature of what was said. *Id.* at 804–05. The judge excused the alternate and then proceeded to *voir dire* each member of the jury individually as to whether he or she had discussed the case with anyone, heard it discussed, or felt unable to continue as an impartial juror. *Id.* at 805. In response to the argument of two of the appellants that the *voir dire* was insufficient because it did not specifically refer to the incident, this court held that the trial court "properly did not want to risk tainting those jurors who remained unaware that one of their colleagues had been approached, or who had heard rumors but possessed no specific information." *Id.* at 806.

In the present case, however, the situation was quite different from that in *Waller.* There was no risk here that the judge's questions would provide new information to Juror 722, who had heard all the evidence along with the other jurors. Moreover, decisions which address the problem of unauthorized communications to jurors, while not specifically dealing with the question presented here, generally appear to countenance detailed probing of the subject matter of the communication. *See, e.g., United States v. Heller,* 785 F.2d 1524, 1525–26 (11th Cir.1986); *United States v. Hines,* 696 F.2d 722, 730–31 (10th Cir.1982); *United States v. Pecora,* 693

F.2d 421, 424–25 (5th Cir.1982), *cert. denied,* 462 U.S. 1119, 103 S.Ct. 3087, 77 L.Ed.2d 1348 (1983); *United States v. Henderson,* 404 F.2d 832, 835 (9th Cir. 1968), *cert. denied,* 394 U.S. 1006, 89 S.Ct. 1606, 22 L.Ed.2d 785 (1969). *But see Doe, supra,* 513 F.2d at 712 ("Even though a jury may speculate that . . . inquiries [into unauthorized communications] might likely be stimulated by the defense, wherever possible a judge should attempt to conceal the origin of his concern."). We do not see how any harm could have been done if the judge had asked Juror 722, at least, what the other former alternate had said to him. Indeed, that might well have been the preferable course.

Nevertheless, we reject Leeper's challenge to the extent of the trial court's *voir dire* examination of Juror 722. We do so not only because of the wide latitude which is vested in the trial court in these matters, *see* authorities discussed at pp. 698–699, *supra,* but also because his counsel was given ample opportunity to explore this area and declined to do so. Prior to conducting the *voir dire,* the trial judge asked the attorneys if they had any questions which they wished to ask Juror 722, adding that counsel could either present proposed questions to the court or examine the juror themselves. The defense attorney stated he would "reserve that" until the judge finished with his own inquiry. Subsequently, during a break in the *voir dire,* the judge asked counsel for both parties if either had anything which he wished to ask the juror. The prosecutor stated he did not, while Leeper's attorney moved for a mistrial. Although the judge never explicitly ruled on that motion, he proceeded to ask two more questions of Juror 722, and then called in the remaining jurors and formally made the former alternate a member of the reconstituted jury. Defense counsel interposed no objection. A fair reading of the colloquy between court and counsel, though concededly not the only reading,[10] suggests that Leeper's attorney

10. After Leeper's attorney asked for a mistrial because it was possible that the two former alternates had discussed Leeper's guilt or innocence, the judge stated that "he did not want to go into that." This may have inhibited defense counsel from requesting, as an alternative to a

wanted the judge to declare a mistrial, rather than to ask additional questions.

Since the trial judge was not specifically requested to inquire into the details of the conversation between the two alternates, and since there is no reasonable basis to suppose that the substituted juror, who had done no wrong, was any more or less favorable to the defense than the excused juror, we discern no abuse of discretion or realistic possibility of prejudice to Leeper. Accordingly, Leeper's conviction is hereby

*Affirmed.*

mistrial, that the judge interrogate the alternate     on the subject matter of the discussion.