**Warren E. McCALLUM, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 01–CF–1318.**

District of Columbia Court of Appeals.

Argued Oct. 10, 2002.

Decided Oct. 24, 2002.

Warren E. Gorman, Chevy Chase, MD, for appellant.

Michael C. Liebman, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr., and James G. McGovern, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB, FARRELL, and REID, Associate Judges.

FARRELL, Associate Judge:

Appellant was found guilty of distribution of cocaine and simple possession of cocaine (a conviction the government agrees must be vacated as a lesser included offense). The convictions arose from appellant's sale in April 2001, of two bags of crack cocaine to an undercover police officer for twenty dollars, after which appellant was arrested and found to have the twenty dollars—in marked police currency—in his possession.

■ The only issue necessitating publication is appellant's argument that the trial judge erred in substituting an alternate juror for a juror who had become incapacitated after the jury began its deliberations. Appellant relies chiefly on *Bulls v. United States*, 490 A.2d 197 (D.C.1985), in which this court held that substitution of an alternate juror once deliberations had begun violated then Super. Ct.Crim. R. 24(c), and was reversible error.

*Bulls*, however, was effectively overruled by a 2000 amendment to Rule 24(c). *See* Super. Ct.Crim. R. 24(c)(3) (2002). *Bulls* rested expressly on a violation of the rule as it then existed, *see id.* at 199–200, 202,[1] which provided that alternate jurors could replace jurors "who, *prior to the time* the jury retires to consider the verdict, become or are found to be unable or disqualified to perform their duties." *Id.* at 200 (quoting then Super. Ct.Crim. R. 24(c)) (emphasis by *Bulls*). In August 2000, however, following the lead of the Federal Rules of Criminal Procedure, Su-

per. Ct.Crim. R. 24(c) was amended to provide:

> (3) Retention of Alternate Jurors. When the jury retires to consider the verdict, the Court in its discretion may retain the alternate juror during deliberations. If the Court decides to retain the alternate jurors, it shall ensure that they do not discuss the case with any other person unless and until they replace a regular juror during deliberations. If an alternate replaces a juror after deliberations have begun, the Court shall instruct the jury to begin its deliberations anew.

*See also* Fed.R.Crim.P. 24(c)(3).

In this case, Judge Queen followed Rule 24(c)(3) to the letter. Before deliberations began, she addressed the two alternate jurors (numbers 4 and 13) as follows:

> You have been the alternates in this matter. Give your notebooks to the clerk so she can secure them. Now, although we are starting deliberations today, I would ask you not to discuss the case with each other or with anyone else. If something happens to one of our deliberating jurors before there is a verdict, we may bring you back, hand you your notes and start the deliberations all over again with your participation. If you want to, you can check back Monday or Tuesday and see whether there is a verdict, and then you can talk about it as much as you would like, but for now, please don't.

The judge therefore "retain[ed] the alternate jurors" and instructed them so as to "ensure that they [did] not discuss the case with any other person." Rule 24(c)(3). Later, when a juror became incapacitated

---

**1.** Although the appellant in *Bulls* argued that juror replacement during deliberations violated the Constitution, the court took note of the "considerable authority support[ing] the government's position that the trial court's action

was not unconstitutional," but did not reach the issue because "we conclude that the trial court violated Rule 24." 490 A.2d at 199–200 & n. 9.

during deliberation,[2] the judge summoned alternate juror no. 13 and confirmed by questioning that the juror had indeed not spoken to anyone about the case nor "reached any decisions about it." The judge thereupon replaced the incapacitated juror and instructed the jury in accordance with the rule:

> As you know, yesterday Juror 8 became ill during deliberations and had to leave. We suspended jury deliberations at that time.
>
> At this time you will note that Juror 13 is here and prepared to join you. Juror 8 is no longer available to us.
>
> At this time I instruct you that all prior deliberations are void and not controlling in these cases. I will take your verdict forms that you have used at this point. They will be sealed and no longer available to you. All decisions made by you as a jury [are] held for naught. It means nothing. You're starting all over again.
>
> Juror 13 will now join you and your jury deliberations will commence again as if the prior deliberations have never occurred.
>
> *   *   *   *   *   *
>
> Ladies and gentleman, you are beginning your deliberations anew. You are a new jury panel. You are a new deliberating jury.
>
> No decision that you have made is binding upon you. You must begin to discuss this case as if I just finished my jury instructions to you at the close of the evidence.

In addition to his general, but misplaced, reliance on *Bulls,* appellant makes two challenges to the procedure followed by Judge Queen. First, he argues that she did not actually "retain" the alternate juror because she allowed the juror to go home until recalled. The argument, in addition to not having been raised in the trial court, *see Jones v. United States,* 779 A.2d 357, 360 (D.C.2001) (citations omitted), rests on the misconception that only by *sequestering* an alternate juror can the trial judge "retain" the juror for purposes of the rule. Rule 24(c)(3) does not mention sequestration, unlike Super. Ct.Crim. R. 53(d) ("In a widely publicized or sensational criminal case, the Court . . . may issue a special order governing . . . the management and sequestration of jurors . . . .").[3] All the rule requires is that the judge "take appropriate steps to insulate the jurors . . ., for example, by separating the alternates from the deliberating jurors and instructing the alternate jurors not to discuss the case with any other person until they replace a regular juror." Advisory Committee Note to Fed.R.Crim.P. 24(c)(3).[4] Appellant's equation of "retain" with "sequester" would inexplicably require the trial judge to do with alternates what she need not do with the deliberating jurors.

Appellant further argues, for the first time on appeal, that the trial judge may not employ Rule 24(c)(3) without first conducting a *voir dire* of the deliberating jurors to see whether it is feasible—from any consensus they have reached—to be-

---

**2.** Appellant makes no challenge to the decision to excuse the juror, who had become ill.

**3.** Sequestration in all cases is a matter committed to the trial court's discretion, *see Catlett v. United States,* 545 A.2d 1202, 1214 (D.C.1988), contrary to appellant's argument that an alternate juror must be sequestered

before he or she may be substituted under Rule 24(c)(3).

**4.** This court "look[s] with favor on the federal authorities" interpreting an identical federal rule. *See Demus v. United States,* 710 A.2d 858, 859 (D.C.1998).

lieve they can lay aside conclusions already formed and obey the instruction "to begin ... deliberations anew." This amounts to an attack on the rule itself and the assumption, an almost invariable one in the law,[5] that jurors can adhere to instructions in these circumstances. Interrogating jurors about conclusions they have reached concerning guilt or innocence is dangerous in any case, see, e.g., Sellars v. United States, 401 A.2d 974, 982 (D.C.1979), and nothing in the amended rule, or in the right to a unanimous verdict, Rule 31(a), compelled the judge to question the jurors in this case about their deliberations before substituting an alternate.

▆ Appellant's remaining arguments on appeal require no extended discussion. The government concedes that it turned over a chemist's report to the defense later than five days before trial, contrary to D.C.Code § 48–905.06 (2001). But, in the circumstances, including the opportunity appellant had to call the chemist as a witness if he chose, and his failure even now to challenge the accuracy of the report, this was not reversible error. *Compare Belton v. United States,* 580 A.2d 1289 (D.C.1990) *with Johnson v. United States,* 596 A.2d 511 (D.C.1991). Further, the prosecutor's reference in summation to a drug "cartel" (a remark the judge directed the jury to disregard) was not prejudicial in light of the strong evidence of appellant's guilt.[6]

Accordingly, appellant's conviction for distribution of cocaine is affirmed; in keeping with the government's concession, his conviction for simple possession of cocaine should be vacated on remand.

*So ordered.*

---

**5.** *See Richardson v. Marsh,* 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).

**6.** The judge's own comment to the jury at one point that the chemist's report was "competent and relevant" evidence, besides being correct given her decision to admit the report as evidence, did not prevent appellant from raising whatever questions he could as to whether the government had proved the nature of the substance distributed.