**Roy L. TOLBERT, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 98–CF–407.

District of Columbia Court of Appeals.

Argued Feb. 5, 2003.
Decided July 27, 2006.

Monoranjan Bezboruah, appointed by the court, for appellant.

John P. Gidez, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, Kenneth L. Wainstein, United States Attorney, John R. Fisher Assistant United States Attorney at the time the brief was filed, Roy W. McLeese III, David B. Goodhand, Margaret J. Chriss, and Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON,[1] Chief Judge, FARRELL, Associate Judge, and WAGNER,[2] Senior Judge.

WASHINGTON, Chief Judge:

Appellant, Roy L. Tolbert, was charged with assault with intent to kill while armed in violation of D.C.Code § 22–401 (2001), and aggravated assault while armed in violation of D.C.Code § 22–404 (2001), in connection with the stabbing of Todd Hopkins. Appellant argues on appeal that: 1) there was insufficient evidence to support his conviction; 2) the charges of assault with intent to kill while armed and aggravated assault while armed should merge; 3) the trial court should have granted a new trial based on jury misconduct; and 4) the trial court abused its discretion by denying his ineffective assistance of counsel claim with-

out holding a hearing.[3] After reviewing the supplemental record after remand, we affirm.

On December 1, 1994, appellant visited the Eastside Club in Washington, D.C. along with several friends. Todd Hopkins and several of his friends were also at the club. Hopkins and appellant were not friends[4] and at some point, according to Hopkins, he became intimidated by appellant and his friends, who seemed to be surrounding him, and Hopkins decided to leave the club. Hopkins and his friend, Ricky Skipper, began running upon leaving the club and were followed by a group that included appellant. Shortly thereafter, Hopkins and Skipper were found stabbed in separate locations. Hopkins testified during the trial that appellant stabbed him. He also identified appellant as the stabber to a police officer and one of his friends while he was recuperating in the hospital. He told an investigator for appellant's defense counsel, however, that he did not know who stabbed him.[5]

While appellant was observed by others running in the same direction as Hopkins, none of the government's witnesses, besides Hopkins, testified that they saw appellant with a knife or observed the stabbing. Appellant was arrested a short distance from where Hopkins was found

1. Judge Washington was an Associate Judge of the court at the time of argument. His status changed to Chief Judge on August 6, 2005.

2. Judge Wagner was Chief Judge of the court at the time of argument. Her status changed to Senior Judge on December 21, 2005.

3. Because no appeal was taken from the denial of appellant's § 23–110 motion, and because appellant's claims of ineffective assistance of counsel cannot be addressed on the present record, that matter will not be addressed in this opinion. *See Pearsall v. United*

*States,* 859 A.2d 634, 639 (D.C.2004) (noting the inability of this court to review the merits of § 23–110 motion denied without a hearing where an appropriate appeal has not been filed).

4. Hopkins testified that the previous day he saw appellant at the Pentagon City Mall and that appellant accused him of participating in the murder of one of appellant's friends, Andre Newton.

5. Hopkins later testified that this statement to the investigator was false.

stabbed. Police did not find a knife on appellant, but there were knives found near the location where Hopkins had been lying. Appellant was tried three times for the stabbing of Hopkins. The first two trials resulted in hung juries. At the third trial, appellant was convicted of both charges.

## I.

■ Appellant first argues that there was insufficient evidence to support his conviction. In reviewing such a claim this court:

> views the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact.... The evidence may be deemed sufficient even if it does not exclude every reasonable hypothesis other than guilt. It is only where there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that the trial court may properly take the case from the jury.

*Gibson v. United States,* 792 A.2d 1059, 1065 (D.C.) (citations and internal quotation marks omitted), *cert. denied,* 536 U.S. 972, 122 S.Ct. 2692, 153 L.Ed.2d 861 (2002).

■ Appellant contends that the only evidence that an assault took place is the testimony of the victim. However, evidence supplied by the victim may provide sufficient evidence for a conviction. *Settles v. United States,* 570 A.2d 307, 308 (D.C.1990). Furthermore, the testimony of a single eyewitness is also sufficient evidence. *Gibson,* 792 A.2d at 1066 ("This court has often and consistently held that the testimony of a single witness is sufficient to sustain a criminal conviction, even when other witnesses may testify to the contrary."); *In re R.H.M.,* 630 A.2d 705, 708 (D.C.1993).

■ "To prove the [assault with intent to kill while armed] AWIKWA ... the government had to show beyond a reasonable doubt that [appellant]: (1) made an assault on [Mr. Hopkins]; and (2) did so with specific intent to kill; (3) while armed." *Nixon v. United States,* 730 A.2d 145, 148 (D.C.1999). Mr. Hopkins testified that a few days before the stabbing, appellant had accused him of being involved in the killing of his friend, Andre Newton. Therefore, the jury could infer that there was animosity between appellant and Mr. Hopkins. *See Bedney v. United States,* 471 A.2d 1022, 1024 (D.C.1984). Mr. Hopkins also testified that appellant stabbed him with a knife in the abdomen and chest. Because Mr. Hopkins' testimony was sufficient evidence for a jury to find all of the elements of AWIKWA, appellant's argument that there was insufficient evidence to support his AWIKWA conviction fails.

■ "To prove aggravated assault while armed [AAWA] beyond a reasonable doubt, the government had to show that [appellant]: (1) caused serious bodily injury to [Hopkins]; and (2) either 'knowingly or purposely cause[d] serious bodily injury to [him]' ...; (3) while armed." *Nixon,* 730 A.2d at 149. Again, a reasonably minded juror could rely upon Hopkins' testimony regarding the events of the stabbing to reach the conclusion that appellant intended to cause Hopkins serious bodily injury. Furthermore, according to the physician who treated Hopkins, the injuries caused by the stabbing were life threatening.

## II.

■ Appellant, also, contends that his convictions for AWIKWA and aggravated

assault should merge. In *Nixon*, this court held that

> We find no merit to the argument that AAWA and AWIKWA convictions merge under the reasoning of *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *Blockburger* held that 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' 284 U.S. at 304, 52 S.Ct. 180. The elements of proof and the underlying facts are not the same for AAWA and AWIKWA. Unlike AWIKWA, AAWA requires a showing of facts that prove serious bodily injury. Similarly, AWIKWA requires proof of facts showing specific intent whereas there is no specific intent requirement for AAWA. Hence, the two crimes do not merge under the *Blockburger* test.

*Nixon*, 730 A.2d at 152. Therefore, appellant's convictions for AAWA and AWIKWA do not merge.

## III.

Appellant's third argument is that the trial court abused its discretion when it refused to grant appellant's motions for a new trial as a result of two separate instances of jury contamination. First, appellant contends that he is entitled to a new trial because one of the jurors withheld information during voir dire about the juror's familiarity with the nightclub where the offense occurred and second, because the jurors overheard a derogatory statement made by a police officer about appellant.

█ In the first instance, one of the jurors, Juror # 217, despite having "earlier frequented the Eastside Club," failed to respond to the court's voir dire question concerning whether any of the jurors had "any special familiarity with the immediate site of the alleged offense." Appellant argues that the juror's failure to honestly answer the question during the voir dire indicates that she may have been biased. In addition, he points out the juror would have been struck for cause based on her perception of the club as a place where fights occurred when she frequented the establishment and because of the possibility that the juror had some familiarity with appellant himself. After questioning the juror, the trial court found that she would not properly have been struck for cause and that a new trial was not warranted because: 1) the juror had not visited the club for a substantial amount of time before the stabbing incident; 2) though the juror thought it was possible that appellant might have recognized her from the club, she stated that she did not know appellant or any of the witnesses in the case; 3) the juror did not have any information about the club that was prejudicial to appellant; and 4) based on her answers to the trial judge's inquires, the juror did not appear biased against appellant.

In *Artisst v. United States*, 554 A.2d 327 (D.C.1989), this court held that

> [w]here it is alleged after trial that a juror failed to answer a question correctly on voir dire, the court may therefore properly uphold the verdict or order a new trial upon concluding a post-trial hearing to evaluate the materiality of the undisclosed information and the truthfulness of the juror's voir dire answers.... If it finds that the nondisclosure of material information was innocent or inadvertent, the decision whether to grant a new trial is within the court's discretion.

*Id.* at 330–31. In this case, the trial judge held a hearing and determined that had

the juror identified her familiarity with the club during voir dire, the juror would not have been properly dismissed for cause. *Harris v. United States*, 606 A.2d 763 (D.C.1992). Furthermore, he found that the juror's familiarity with the club had not led to bias by the juror. Given these findings, we do not find that the judge abused his discretion in denying appellant a new trial on this basis.

In the second instance, a juror overheard a police officer/bouncer make a comment outside the courtroom that appellant was a bad guy who needed to be locked away. According to appellant, the juror repeated this comment during jury deliberations. Juror # 423, reported this occurrence to a government attorney soon after the verdict had been entered and the government attorney contacted appellant's counsel. Appellant moved for a new trial on the basis that the comment contaminated the jury and he was not afforded an opportunity to reopen the case to refute the negative characterization. The trial judge held a hearing regarding the matter and questioned Juror # 423 about the event. Juror # 423 indicated that there was no substantive discussion about the comment, though several jurors expressed surprise that Juror # 423 had overheard the police talking about the case. The court concluded, based solely on the testimony of Juror # 423, that the comments did not have a prejudicial impact on the verdict.

On appeal, this court concluded that the record was insufficient for us to determine whether the comments played a part in the jury's deliberations, and we remanded the record to the trial court for further hearings to more fully explore whether the jury's verdict was tainted by the juror's comments. As part of that order, we suggested that the trial court interview as many of the jurors as practicable.[6] After interviewing all but one of the jurors from the trial,[7] the trial court issued its Supplemental Findings of Fact and Conclusions of Law concerning the Issue of Potential Jury Taint. Once again the trial court concluded that the jury's verdict was not tainted by the comments of the juror and the issue is now before us for review based on the supplemental record and additional briefing by the parties.

A jury must "decide the case solely on the evidence before it." *Johnson v. United States*, 701 A.2d 1085, 1090 (D.C. 1997). Even when extraneous information is shared with the jury, that extraneous information does not always have a prejudicial effect on a jury. *Harris*, 606 A.2d at 765; *see generally Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). In order to determine whether extraneous information has a prejudicial impact on the jury, the trial court should conduct a hearing. *Hill v. United States*, 622 A.2d 680, 683 (D.C.1993). "[W]here, following a hearing, the defendant has established a substantial likelihood of actual prejudice from the unauthorized contact, ... 'all reasonable doubts [about the juror's ability to render an impartial verdict must] be resolved in favor of the accused.'" *Id.* at 684 (quoting *United States v. Williams*, 262 U.S.App. D.C. 112, 128, 822 F.2d 1174, 1190 (1987)). "Thus, upon a *prima facie* showing of juror bias or partiality, 'it is the government's burden to

6. Upon reviewing the supplemental record, it came to the attention of the panel that one of the jurors in this case is related by marriage to one of the judges on this panel. Having reviewed appellant's supplemental brief, where that juror merited only brief and insub- stantial mention, we are satisfied that there is no basis for recusal in this case.

7. Juror # 559 died before the remand hearing was held.

demonstrate that the juror's contact with extraneous information was harmless or non-prejudicial.'" *Al–Mahdi v. United States,* 867 A.2d 1011, 1019 (D.C.2005) (quoting *Hill, supra,* 622 A.2d at 684). Whereas in this case, however, the judge leads the inquiry into the potential for juror bias, the government's burden is made less demanding. *Id.* at 1019 (citing *United States v. Butler,* 262 U.S.App.D.C. 129, 134, 822 F.2d 1191, 1196 (1987)).

In *Leeper v. United States,* 579 A.2d 695, 698 (D.C.1990) this court held that "[f]ollowing a *proper* hearing, the determination of juror bias or prejudice lies particularly within the discretion of the trial court, reversible only for a clear abuse of discretion, and the findings of fact underlying that determination are entitled to 'great deference.'" (Emphasis added.) "Inasmuch as the substance of the *ex parte* communications and their effect on juror impartiality are questions of historical fact, ... we must accept the trial court's findings thereon unless those findings are clearly erroneous." *Al–Mahdi, supra,* 867 A.2d at 1020 (internal quotations and citations omitted). "Even though review is deferential, we will not hesitate to find reversible error if the record does not support the trial judge's decision." *Id.*

On appeal, appellant now contends that the trial court's findings of fact with respect to the testimony of one of the jurors, Juror # 477, is erroneous because the findings are not supported by the evidence. Further, appellant contends that the trial court's erroneous findings of fact regarding the testimony of Juror # 477 when combined with its improper disavowal of a statement it made earlier in the proceedings about the testimony of Juror # 217, and in its discounting of the testimony of Juror # 423, supports his argument that the jury's verdict was tainted.

In this case, the trial court conducted a thorough interview of each of the jurors who participated in the trial in the presence of counsel for appellant and counsel for the government. According to the trial court's findings of fact, ten of the eleven jurors interviewed did not recall any statement being made to the assembled jury or to any of them individually regarding any out of court comments by a police officer during deliberations. The trial court also found that the remaining juror, Juror # 423, the one who originally reported that someone on the jury had commented about overhearing some derogatory comments about appellant, remembers the comment being made but didn't remember whether that remark caused any discussion amongst the jurors. The court further found that the comment did not influence Juror # 423's decision and did not enter into the jury's deliberations. Based on the juror interviews, the trial court concluded that there was no opportunity for bias presented to the jury generally and that with respect to the one juror who acknowledged that she heard the comment, the comment did not influence her decision. Ultimately, the trial court concluded that there was no evidence that the jury's verdict was tainted and provided this court with a copy of its supplemental findings of fact and conclusions of law.

With respect to appellant's latter two claims, a review of the record convinces us that there is no support for his contention that the trial court abused its discretion in its consideration of the testimony of Jurors # 217 and # 423. In the case of the alleged "disavowal of its prior findings," the trial court explained that appellant's counsel had misconstrued an earlier statement made by the court in the earlier order denying appellant's motion for a new trial. Regardless, Juror # 217 was subsequently questioned at length by counsel for appellant and she testified that she did not

recall hearing about any outside comments while she served as a juror in this case.

As for the claim that the trial court improperly discounted the testimony of Juror # 423, our review of the record confirms that the trial court's findings accurately reflect the substance of the juror's testimony. Unlike the other jurors in this case, Juror # 423 testified about the incident soon after the trial. She testified that she was told by one of the other jurors that the juror had overheard a police officer/bouncer comment that appellant was a bad man that needed to be locked up. She further testified that she thought that other jurors had also heard the comment. While Juror # 423 initially testified that the statement had been made during the jury's deliberations, she later on testified that she believed that she had been mistaken about the timing of the statement and that after some further thought she believed that the statement had been made prior to the start of the deliberations and that it was never discussed again. She also testified that it was mentioned in a casual context, such as when the jurors were waiting to be called into the courtroom or returning from lunch and that it was neither raised nor discussed in a serious manner. Finally she testified that it was never raised again and it was never used by a juror as an argument for or against any particular verdict. Thus, the trial court's findings with respect to the substance of her testimony is wholly supported by the record.

With respect to the testimony of Juror # 477, there is no record of the trial court's interview on which we can rely to determine whether the trial court's findings are supported by the evidence. According to counsel for appellant, Juror # 477 testified that the jury fully discussed the reported derogatory comments by the police officer in much the same way

they discussed everything else about the trial. According to the trial court's Supplemental Findings, however, Juror # 477 testified that he recalled nothing about any discussion concerning any outside statement relating to appellant but that he did recall that the jurors discussed the fact that the defendant did not testify and that all of the participants in the events who testified were unsavory. The government's recollection of Juror # 477's testimony is consistent with the trial court's findings. Interestingly, appellant also recalls that Juror # 477 talked about unsavory characters, but appellant claims that Juror # 477 used that phrase in connection with his testimony that the jury discussed the overheard remark by the police officer that appellant was a bad man who needed to be locked up. Given the nature of the inquiry being undertaken by the trial court, it is inconceivable to us that Juror # 477 actually testified that the jury discussed and considered the improper extraneous statement about appellant by the police officer and yet the trial court failed to include anything about it in his findings of fact. However, even assuming that appellant's recollection of Juror # 477's testimony is more accurate than the trial court's findings, Juror # 477 never testified that his decision or the jury's verdict was influenced by the out of court statement attributed to the police officer and reported by one of the jurors. Therefore, even viewing the evidence under the standard we have adopted in this case, one that requires that all reasonable doubts about a juror's ability to render an impartial verdict be resolved in favor of the accused, we are satisfied beyond a reasonable doubt that the verdict rendered by Juror # 477 and the rest of the jury panel was not tainted by any improper statement by one of the jurors.

For the foregoing reasons, the judgment of the trial court is

*Affirmed.*